Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
Larry J. Caldwell (SBN 88867) *lc@mckennonlawgroup.com*
**McKENNON LAW GROUP PC**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Phone:  949-387-9595  |  Fax:  949-385-5165

Attorneys for Plaintiff Aghazahra Nikouardestani, a.k.a. Agha Nikou

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| AGHAZAHRA NIKOUARDESTANI, a.k.a. AGHA NIKOU,<br><br>            Plaintiff,<br><br>vs.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No.:<br><br>Action Filed:<br><br>Trial Date:<br><br>**COMPLAINT FOR BREACH OF FIDUCIARY DUTY UNDER ERISA, FOR EQUITABLE RELIEF, INCLUDING DECLARATORY RELIEF AND INJUNCTIVE RELIEF; ATTORNEYS' FEES** |

      [Filed Concurrently With:
      -  Civil Cover Sheet;
      -  Summons; and
      -  Certification of Interested Parties]

**JURISDICTION AND VENUE**

1. Plaintiff Aghazahra Nikouardestani, a.k.a. Agha Nikou ("Plaintiff") brings this action to enjoin unlawful conduct by a plan fiduciary pursuant to Sections 502(a)(3)(A) and 502(a)(3)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sections 1132(a)(3)(A) and (a)(3)(B).  This Court has subject-matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502(e) and (f), 29 U.S.C. Section 1132(e) and (f), and 28 U.S.C. Section 1331.

2. Venue lies in the Central District of California, Eastern Division, pursuant to 28 U.S.C. Section 1391, because Plaintiff resides in the Eastern Division of this District, and because Defendant, Prudential Insurance Company of America, a New Jersey Corporation ("Prudential"), does business in this District as a licensed insurance company.

**THE PARTIES**

3. Plaintiff is an individual who, at all times relevant to this action, was a participant, as defined by ERISA Section 3(7), 29 U.S.C. Section 1002(7), in the employee welfare benefit plan (the "Plan" or "Policy") established by her former employer, Education Corporation of America ("Education Corporation").  Plaintiff's rights under the Plan are at issue in this action.

4. Prudential is a life insurance company that insures and administers the long-term disability Plan, including claims decisions and payment of disability benefits to Plan participants such as Plaintiff.  Prudential insures the Plan under a group disability policy issued to Education Corporation ("Group Disability Policy").

5. The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff at this time, who therefore sues DOES 1

-1-

Case No.:



1 through 10 by fictitious names and will ask leave of the Court to amend this Complaint to show the true names and capacities of DOES 1 through 10 when the same are ascertained; DOES 1 through 10 are sued as principals and/or agents, servants, attorneys, or employees of said principals, and all of the acts erformed by them were within the course and scope of their authority and employment.  Plaintiff is informed and believes and thereupon alleges that each of DOES 1 through 10 is legally responsible in some manner for the events referred to herein, and directly and proximately caused the damages and injuries to Plaintiff as alleged below.

## FACTUAL BACKGROUND
## Prudential's Unlawful Claim for Reimbursement
## and Collection Threat

6. Plaintiff became disabled and was approved for LTD benefits under the Plan in 2018.  Prudential paid her LTD benefits each month from December 2018 through December 21, 2021.  As a result of Prudential's termination of her LTD benefits, Plaintiff will not be receiving any additional LTD benefits in the future

7. In 2019 through 2021, Plaintiff was paid Social Security Disability Insurance ("SSDI") benefits in the amount of $30,675. Prudential contends that these SSDI payments, along with her alleged receipt of Social Security Retirement ("SSR") benefits, resulted in overpayment of LTD benefits in the months from July 1, 2019, through July 31, 2021, totaling $30,675.  Prudential contends that it has a legal right to seek reimbursement of such alleged overpayments from Plaintiff under a provision in its Group Disability Policy entitled "What Are Deductible Sources of Income?"  It appears that the more pertinent provision in the Group Disability Policy is entitled "Right of Recovery," which provides that



> [i]f benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:
>
> 1. reduce future benefits until full reimbursement is made; and
> 2. recover such overpayments from the Insured Employee or his or her estate.

8. Prudential never invoked this provision of the Group Disability Policy and has therefore waived enforcement of it. Prudential sent a series of letters to Plaintiff informing her of the alleged $30,675 overpayment and representing that she allegedly owes a duty to re-pay that amount to Prudential. Prudential's first letter to Plaintiff demanding reimbursement of alleged overpayments was dated August 3, 2021. In that letter, Prudential stated:

> We have paid LTD benefits to you without a reduction or with an incorrect reduction for SSD and SSR benefits from July 1, 2019 through July 31, 2021. As a result, we have overpaid LTD benefits in the amount of $30,675.00. Our calculations of the overpaid amount are enclosed for your reference.

The August 3, 2021 letter informed Plaintiff that she was required to reimburse Prudential for the alleged overpayments and enclosed a Direct Withdrawal Authorization form to enable Prudential to take payment of the overpayment out of Plaintiff's personal bank account. Prudential was seeking reimbursement of the alleged overpayments from Plaintiff's general funds in her personal bank account.

9. On September 2, 2021, Prudential sent a second letter to Plaintiff demanding reimbursement of the alleged overpayments. The September 2, 2021 letter again enclosed a Direct Withdrawal Authorization form designed to seek reimbursement from Plaintiff's general funds in her personal bank account.



10. On September 22, 2021, Prudential sent a third letter to Plaintiff demanding repayment of the alleged overpayments. In this letter, Prudential again misrepresented that Plaintiff was obligated to re-pay the $30,675 in alleged overpayments, and again enclosed a Direct Withdrawal Authorization. Prudential turned up the heat on Plaintiff with an ominous threat that "[i]f we do not receive reimbursement or have a mutually agreed upon repayment plan in place by October 13, 2021, this matter will be referred to a collection agency for further handling."

11. Prudential followed through on this threat by engaging a collection agency, Brown & Joseph LLC, to collect the alleged overpayment from Plaintiff. On October 30, 2021, Plaintiff received a threatening collection notice from Brown & Joseph LLC on behalf of Prudential, warning her that she only had 30 days to dispute the debt, or she would face further collection action, and a resulting negative impact on her credit rating.

12. As a result of Prudential's threats and collection action against Plaintiff regarding the alleged overpayment, Plaintiff was reasonably forced to retain McKennon Law Group PC. ("McKennon Law Group"). On October 5, 2021, McKennon Law Group sent a letter to Prudential requesting that it provide all Plan documents, including the Group Disability Policy, as well as Prudential's entire claim file.

13. On November 10, 2021, McKennon Law Group sent another letter to Prudential demanding that it cease and desist from all of its threats and collection activities against Plaintiff. In the November 10, 2021 letter, McKennon Law Group explained why Prudential has no right to be reimbursed by Plaintiff for any amount and demanded that Prudential agree to cease and desist from its collection efforts, both directly, and through its outside collection agency. Prudential has failed and refused to respond to this letter.

14.   Regrettably, as of the time of filing of this action, Prudential still had not disavowed its claimed right of reimbursement, and still had not agreed to stop its collection threats and efforts against Plaintiff.

15.   Plaintiff disputes that any overpayments of LTD benefits were made to her. In any event, Plaintiff no longer has control or possession of any of those LTD benefit payments, or any of the SSDI Benefit payments, as they have all been spent. And when she still had the LTD benefits and SSDI Benefit payments, they were co-mingled with her other funds in her bank account.

16.   For the reasons discussed below, ERISA bars Prudential from seeking or obtaining reimbursement of $30,675, or any other amount by Plaintiff. Nonetheless, Plaintiff alleges on information and belief that in the absence of injunctive relief or other appropriate equitable relief from this court, Prudential will continue to seek to collect reimbursement of this amount from Plaintiff, including subjecting her to unlawful and threatening communications from Prudential's collection agency.

**FIRST CLAIM FOR RELIEF**

For Equitable Relief to Enjoin Acts Contrary to Law, for Declaratory Relief, for Breach of Fiduciary Duty, and for Attorneys' Fees

29 U.S.C. Sections 1132(a)(3)(A), (a)(3)(B), (g)(1)

(Plaintiff against Prudential and Does 1 through 10)

17.   Plaintiff incorporates the previous paragraphs as though fully set forth herein.

18.   ERISA Sections 502(a)(3)(A) and 502(a)(3)(B), 29 U.S.C. Sections 1132(a)(3)(A) and 1132(a)(3)(B), permit a plan participant like Plaintiff to bring a civil action to obtain "other appropriate equitable relief," including to enjoin any act or practice which violates any provision of this subchapter, to enforce the terms of the plan, for declaratory relief or to obtain



other appropriate equitable relief to redress such violations. *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012); *Wong v. Aetna Life Ins. Co.*, 51 F.Supp.3d 951 (S.D. Cal. 2014) (relying upon *Bilyeu*).

19. The Plan under which Plaintiff received benefits was an employee welfare plan governed by ERISA. Among the subjects governed by ERISA is the extent of an insurer's right to seek reimbursement of overpayment of benefits from an employee participant. *Bilyeu, supra*; *Wong v. Aetna Life Ins. Co., supra*.

20. Pursuant to 29 USC Section 1132(a)(3), a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. *Id.*

21. In *Bilyeu*, the Ninth Circuit explained that, under ERISA, an insurer can only obtain reimbursement of an overpayment of plan benefits if the insurer proves three elements: "First, there must be a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party. Second, the reimbursement agreement must 'specifically identif[y] a particular fund, distinct from the [beneficiary's] general assets,' from which the fiduciary will be reimbursed. [Citation omitted.] Third, the funds specifically identified by the fiduciary must be "within the possession and control of the [beneficiary].'" *Bilyeu, supra*, 683 F.3d at 1092-1093; *Wong, supra*, 51 F.Supp.3d at 968-969. In *Bilyeu*, as here, the insurer sought reimbursement of overpaid long-term disability benefits resulting from SSDI benefits received by the insured. The Court held that the insurer failed the first part of the test, because the Social Security Act prohibits an insured from assigning SSDI benefits and prohibits an insurer from





1  attaching social security benefits. See 42 U.S.C. § 407(a). *Id.* In *Bilyeu*, the
2  insurer also failed the third part of the test, as it failed to prove that the SSDI
3  benefits that caused the overpayments were still in the insured's possession and
4  control and had not been commingled with the insured's general funds. *Id*.

5      22. Even if an insurer has an alleged contractual reimbursement
6  provision like Prudential is asserting, an equitable lien is the only claim for
7  relief an ERISA insurer may assert to recoup such an overpayment of disability
8  benefits to its insured. The equitable lien may only be placed on the specific
9  fund agreed upon in the insurer's reimbursement agreement with its insured.
10 *Id.* In this action, Plaintiff cannot determine whether Prudential can even meet
11 the first and second prongs of the test in *Bilyeu* and *Wong*, since Prudential has
12 denied Plaintiff the ability to review the Group Disability Policy to determine if
13 it contains a contractual promise by her to reimburse alleged overpayments
14 (first prong), and a contractual right for Prudential to seek reimbursement
15 (second prong).

16     23. Assuming, arguendo, Prudential can prove that the Group
17 Disability Policy provides a basis for Prudential to satisfy the first and second
18 prongs, Prudential will still be unable to satisfy the third prong of the test. LTD
19 benefits previously paid to Plaintiff are the only possible fund identified in the
20 alleged Prudential reimbursement clause, because she will not be receiving any
21 LTD benefits in the future. But the past LTD benefits paid to Plaintiff by
22 Prudential do not satisfy the third prong of the test, because all of those benefit
23 payments have already been spent by Plaintiff or commingled with her other
24 funds. Since Prudential cannot meet the third prong of the test, it is not entitled
25 to seek recovery of the alleged overpayments based on an equitable lien (even
26 if it can prove the first and second prongs, which is also questionable).

27
28

24. Under ERISA, illegally pursuing efforts to collect this overpayment debt is a breach of Prudential's fiduciary duties under ERISA Section 1132(a)(3)(B). *Id*

25. Prudential's past and expected future efforts to coerce Plaintiff into paying the $30,675 allegedly overpaid violate Prudential's fiduciary duties owed under ERISA in two ways. Prudential is seeking to coerce Plaintiff into paying reimbursement from her general funds in violation of ERISA. In this regard, Prudential has represented to Plaintiff that its Group Disability Policy purportedly gives Prudential a legal right to recover such overpayments from Plaintiff. Such a provision in Prudential's Group Disability Policy is unlawful and unenforceable under ERISA, since it would grant Prudential a right to seek reimbursement from Plaintiff's funds other than the LTD benefit payments to Plaintiff that allegedly contained overpayments.

26. ERISA preempts any state law claims Prudential could otherwise pursue, including a breach of contract or similar claim against Plaintiffs. *Bui v. American Telephone & Telegraph Co. Inc.* (9th Cir. 2002) 310 F.3d 1143, 1152 ("ERISA preempts Bui's contract claims. These claims do not merely reference the ERISA plan, they require its construction because the contract allegedly breached is the ERISA plan itself. Accordingly, ERISA preempts the contract claims.")

27. ERISA also bars Prudential from using any state law collection remedy to enforce its alleged reimbursement right, and the absence of any other legal remedy is insufficient to overcome ERISA preemption. *See Bast v. Prudential Ins. Co. of America* (9th Cir. 1998) 150 F.3d 1003, 1010, as amended (Aug. 3, 1998) ("ERISA preempts state law claims, even if the result is that a claimant, relegated to asserting a claim only under ERISA, is left without a remedy. The focus is on ERISA. If it does not provide a remedy, none exists.")



28. A controversy now exists between the parties regarding whether Prudential has a right to pursue any legal action or collection effort to recover the alleged overpayment of past disability benefits from Plaintiff. Prudential alleges that it has the right to seek reimbursement under the Group Disability Policy. Plaintiff alleges that ERISA forbids Prudential from enforcing this alleged Policy right and also forbids Prudential from taking any action to seek reimbursement of any amount of the alleged overpayments from Plaintiff, including but not limited to sending collection demand letters, utilizing an outside collection agency, or threatening, filing, or prosecuting a lawsuit.

29. Plaintiff will suffer irreparable harm unless this Court exercises its equitable power to resolve this controversy in his favor, and to enjoin Prudential from any further effort to collect any amount of the $30,675 or any other amount from Plaintiff.

30. As a direct and proximate result of Prudential's unlawful efforts to collect the $30,675 from Plaintiff, in breach of its duties as an ERISA fiduciary, Plaintiff has been forced to incur attorneys' fees and costs to pursue this action and is entitled to reimbursement of these fees pursuant to 29 U.S.C. Section 1132(g)(1).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for the following relief against all Defendants:

1. That this Court issue a declaratory judgment holding that the alleged provision in the Group Disability Policy entitled "What Are Deductible Sources of Income?" on which Prudential relies for its purported right to seek reimbursement from Plaintiff, the provision entitled "Right of Recovery", and any other provision, term, or condition in the Group Disability Policy that purports to grant such a right of reimbursement, are unlawful and unenforceable under ERISA to the extent Prudential seeks to obtain



1 reimbursement of alleged overpayment of past disability benefits – resulting from SSDI benefits and SSR benefits paid to Plaintiff – from any funds or source other than the past disability benefits that included an overpayment, and to the extent the funds from those past disability benefits are still in Plaintiff's possession and are not commingled with other funds;

2. That this Court issue a permanent injunction enjoining Prudential and any person, agent, employee, or outside collection agency or other person or entity working on behalf of Prudential from taking any action to collect or seek reimbursement of any amount from Plaintiff, including, by way of example, but without limitation, sending any written communication or correspondence by any media, making any telephone calls to Plaintiff (or to anyone else in relation to trying to collect from Plaintiff), making any in-person demand, placing any lien on any personal or real property of Plaintiff, filing any lawsuit against Plaintiff seeking collection or reimbursement, and reporting Plaintiff's alleged reimbursement obligation to any credit reporting agency;

3. For an award of costs and reasonable attorneys' fees pursuant to 29 U.S.C. Section 1132(g); and

4. For such other and further relief as this Court deems just and proper.

Dated: January 25, 2022        **McKENNON LAW GROUP PC**

By: _____
ROBERT J. McKENNON
LARRY J. CALDWELL
Attorneys for Plaintiff,
Aghazahra Nikouardestani a.k.a.
Agha Nikou

